## ALLEN *v.* WHARTON.

(*Supreme Court, General Term, First Department.* January 16, 1891.)

SERVICE OF SUMMONS—MOTION TO VACATE.
    Defendant was induced by plaintiff's agent to come within the jurisdiction of the court, ostensibly for the purpose of negotiations for his employment, but really for the purpose on the part of plaintiff of obtaining an adjustment of a controversy between plaintiff and a third party, with which defendant was connected. Failing in that purpose, plaintiff caused a summons to be served on him. *Held,* that a motion to vacate the service of the summons should be sustained.

Appeal from special term, New York county.

Action by Henry W. Allen against George T. Wharton. Defendant appeals from an order denying his motion to set aside the service of the summons.

Argued before VAN BRUNT, P. J., and BRADY and DANIELS, JJ.

*Cephas Brainard, Jr.,* for appellant. *Booraem, Hamilton & Beckett,* for respondent.

DANIELS, J. The defendant has been and is engaged in business in the city of New Orleans, and a resident and citizen of the state of Louisiana. He

came to this city at the suggestion of Heyman Levin, first contained in a letter written to him by Levin, on the 3d of October, 1890. The object of the suggested visit was to help to dispose of a suit pending in favor of the plaintiff against the Century Company. That company, by its amended answer served on the 16th day of October, denied nearly all the allegations of the complaint against it, and set up by way of further defense that the only contract the plaintiff had for the sale of the Century Dictionary, and concerning which the litigation had arisen, was with the defendant. Levin was apparently acting in the interest of and in co-operation with the plaintiff; and he, on the 13th of October, telegraphed to the defendant at New Orleans, stating that Allen believed, with the presence of the defendant here, arrangements could be made with little cost that would assure him their services, and 1,000 orders by next June, and then added, "Come at once." He replied by the same medium that he would meet Levin on the 17th, but, being unable to leave as was expected, telegraphed him again that he would meet him on Monday morning, which he did, at the Bartholdi Hotel. That was the 20th of October, but nothing resulted from that meeting, and another was appointed for the next morning. At that meeting on the 20th Levin swears that the impression was produced in his mind that the defendant had no intention of bringing about any settlement of the matters in question, and that his mission to New York was at the bidding of the Century Company. This last statement, however, was denied in the affidavit of the treasurer of the Century Company. On the next day Levin called again on the defendant, and, no adjustment of the suit being made, he served the defendant with the summons, which was dated and issued on the day of the first meeting, and after a conference between Levin and the plaintiff with one of their attorneys. Both Levin and the plaintiff deny that it was intended to induce the defendant to visit this state to serve the summons upon him; but the facts themselves are at variance with these denials. If that had not been at least part of the design it is not probable that the summons would have been prepared for service on the 20th, and taken by Levin with him, when he met the defendant for the interview of the 21st of October, and at its close served the summons. It is probable that the invitation extended to the defendant to visit the state was prompted by a twofold object—*First*, to effect a settlement, with his assistance, of the suit against the Century Company; and, *secondly*, if that could not be accomplished, then to commence this suit against him. The facts are such as to warrant only this conclusion, which is confirmed by what was said by Levin as he was leaving after making the service of the summons; and that was: "I guess you will want to see Allen within a week. He is at the Grand Union Hotel now. I do not know what his address will be then." What was done and said discloses the strong probability that what did take place was planned after it became certain that the defendant would visit the city of New York in compliance with the letter and telegram of Levin. The occurrences followed each other too closely to favor any other probable theory. The defendant seems to have reached this city on the 18th; the first interview, which was in the interest of the plaintiff, took place on the 20th, ending in an appointment for another on the 21st; and that, without anything special occurring, ended with the service of the summons issued on the day before. These facts, with the other which had previously come to the plaintiff's knowledge, that the amended answer of the Century Company stated that the only contract was with the defendant, evince the strong probability to be that which has been stated,—that it was designed to serve the summons on the defendant if he failed to bring about the desired settlement. And it is not inconsistent with it that the knowledge of what the answer contained was first received by the plaintiff on the 16th of October, which was two days before the defendant's arrival. Good faith on the part of the plaintiff required that he should have permitted the defendant

again to leave this city without making service of the summons when it became evident that no settlement would be effected through his agency. That was violated in making the service which was made upon him. It was a breach of the confidence which had been inspired by the preceding correspondence; and the settled practice requires that the service of the summons made, as this was made, should not be permitted to stand. *Wyckoff* v. *Packard*, 20 Abb. N. C. 420; *Dunham* v. *Cressy*, 4 N. Y. Supp. 13. No community can be more directly interested in the enforcement of this principle than that of this city, whose business is so intimately interwoven with the intercourse and trade carried on between its people and those of other states and countries. The order should be reversed, with $10 costs and disbursements, and the service of the summons set aside. All concur.