SEBRING, HAROLD L., Associate Judge.
This appeal is from a summary judgment in favor of the defendants in a suit brought by three minor plaintiffs to recover damages for injuries suffered in an automobile collision in Pinellas County, Florida.
The accident, in which three automobiles were involved, occurred north of St. Pet-ersburg, on U. S. Highway 19, at approximately 5:15 on the morning of December 22, 1956. The car in which the plaintiffs were riding was being driven in a southerly direction by Mrs. Thelma Sconyer, the mother of the plaintiffs. A car owned by Edward A. Scheper was being driven in a northerly direction by Mrs. Edith Scheper, the wife of the owner. Riding in the car with Mrs. Scheper was her husband, Edward A. Scheper, and their four minor children. Following the Scheper car was a car owned by W. D. Campbell, which was being driven in a northerly direction by Frederick W. Webster, Jr. In the car with Webster were his wife, their two minor children, and Mrs. W. D. Campbell, the wife of the owner.
At the time and place of the accident, the car being driven by Webster had overtaken and passed, or was in the act of passing, the car being driven by Mrs. Scheper. As the northbound cars met the oncoming Sconyer car a collision occurred, in which Mrs. Sconyer, Mrs. Campbell and Mr. and Mrs. Webster were killed, and the three Sconyer children were injured.
*410 ' Several months after the accident, suit was instituted by the Sconyer children against Mr. and Mrs. Scheper, Mr. W. D. Campbell, and the administrators of the estate of Frederick W. Webster, Jr., deceased, to recover damages for the injuries sustained. In due course, answers were filed and depositions of various persons, including the depositions of the defendants, Mr. and Mrs. Scheper, and James Ralph Sconyer, one of the plaintiffs, were taken. Subsequently, on July 14, 1958, the defendants moved the trial court for the entry of a summary judgment in their favor, on the ground that “the pleadings and affidavits on file, together with affidavits to be filed, show that there is no genuine issue as to any material fact, in that all competent witnesses, after careful and diligent search for all witnesses to this accident, exclude the element of negligence in this case and that the defendants are entitled to a judgment or decree as a matter of law.”
On February 12, 1959 the trial court granted the motion for summary judgment and dismissed the cause of all plaintiffs against all defendants. The question on this appeal is whether the summary judgment should have been entered on the testimony appearing in the depositions before the court and the applicable law controlling the entry of summary judgments.
The record reveals that three orthopedic surgeons treated James Ralph Sconyer after the accident. On direct examination, they stated in their depositions that as the result of the accident the plaintiff had suffered severe injuries to the brain and that in their professional opinion he could have no independent recollection of the facts relating to the accident and was not mentally competent to testify about them.
On cross-examination, these three witnesses were questioned as to whether or not a deposition given by the plaintiff, James Ralph Sconyer, on December 5, 1957, indicated a complete loss of memory or independent recollection concerning the details of the accident in which he was injured. One answered to the effect that the answers given by the plaintiff in his deposition appeared to be coherent and fairly responsive to the questions propounded; that he was unable to say why this was so, unless it was that the plaintiff had “heard the complete story of automobile injuries and wrecks discussed and * * * thinks it is his own memory.” The second witness, when questioned as to whether or not, in his opinion, the deposition of James Ralph Sconyer indicated that the plaintiff had an independent recollection of the accident, answered, in substance: “ * * * that is almost an impossible question to answer.” As to whether he has any specific, uncoached, recollection of the facts of the accident, “I don’t think that anybody could say that definitely” but in my opinion “he does not.” The third witness, when asked to express his opinion as to whether or not the plaintiff at the time his deposition was taken, had an independent recollection of the facts of the accident, had this, in substance to say: I have not seen the plaintiff since the first day he was admitted to the hospital. It has been the experience of many people who have had concussions that events immediately preceding an accident are not recalled. However, it is possible that some people injured as was the plaintiff will recall the facts of an accident several weeks after it has occurred. This fact is not always predictable, but sometimes they can recall things coming closer to the time of the accident and some of them remember events right up to the accident. There is no way for me to tell whether such a thing would be possible in this case. I do not know whether an individual with the type of brain injury suffered by the plaintiff would have defects of memory at a later date, because the patients I have seen with such injuries have always died. I believe the plaintiff in this case will probably have a “loss of memory of the events leading up to” the accident and am of the opinion that after the accident happened, and when his deposition was taken on December 5, 1957, he was not capable *411 of recalling events immediately preceding the accident.
In addition to the depositions given by the three orthopedic surgeons, the depositions of two psychiatrists were before the trial court when it ruled on the motion for summary judgment. On direct examination, one of these psychiatrists testified that he had examined the plaintiff for a period of approximately 30 minutes, on June 30, 1958, to ascertain whether the plaintiff was competent to testify in a trial concerning the details of the accident; that during the examination the plaintiff had been unable to tell “what had happened to him and could only tell * * * that people had told him he had been involved in an accident”; that from thiiinterview, he, the psychiatrist, was of opinion that the plaintiff would not be able to remember or recall accurately any of the events of the accident.
During the cross examination of this witness, the questions and answers given by the plaintiff in his deposition of December 5, 1957, were read to him and he was asked to give an opinion as to whether or not the answers indicated that the plaintiff was mentally competent to testify, on the day his deposition was taken, concerning the details of the accident in which he had been injured. To this question, the witness answered in effect: The plaintiff responded much better in his deposition than he did when I examined him. There is nothing in the deposition to indicate that the plaintiff was incompetent at the time it was taken. The answers appear to be coherent and seem to indicate that the plaintiff was capable of answering in detail. So far as can be determined from the typewritten record, the answers appear to indicate that the plaintiff had a certain amount of memory of the accident and that he could relate what he remembered. However, since I did not see or hear the plaintiff testify when his deposition was taken, I do not feel that I am qualified to give an opinion as to his competency to testify, or to state “whether he had complete memory of this accident” at that time.
The statement of the second psychiatrist whose deposition was taken was to the effect that he had examined the plaintiff on January 19, 1959 — approximately three weeks before the trial court entered the summary judgment in favor of the defendants — and was of opinion that although the plaintiff had suffered permanent and crippling injuries, he was “competent to testify in court as to the facts of the accident in which he received said injuries”; that he had read the answers given by the plaintiff to questions asked at the hearing by defense counsel and was of opinion that “In spite of the boy’s tender age, and * * * the adverse conditions prevailing [during the course of the hearing] a most cursory reading of the deposition will show that [the plaintiff] gave direct, responsive answers and * * * had a memory of the facts about which he testified”; that he, the examining psychiatrist, was of opinion that the plaintiff was “competent to testify on the day his deposition was taken.”
There were three other depositions before the trial court when it ruled on the motion for summary judgment, but they need not be considered here. Two of them were depositions given by the defendants, Mr. and Mrs. Scheper, which contained statements tending to prove that Mrs. Sconyer, the driver of the car in which the plaintiff was riding at the time of the accident, was solely responsible for the collision. The third deposition was a deposition given by the father of James Ralph Sconyer which contained testimony to the effect that in a conversation he had had with Mrs. Scheper after the accident she had made statements tending to prove that Mrs. Sconyer was not solely responsible for the collision.
After a consideration of the depositions in the cause, the trial court ruled, on the motion for summary judgment, that “after examining and reading the depositions of *412 * * * the attending physicians * * * and also after examining the [depositions of the psychiatrists who examined the plaintiff to determine his competency] it is the decision of this court that the said minor, James Ralph Sconyer, who was approximately nine years old at the time of the accident * * * is incompetent to testify as to the events that happened immediately prior to and during said accident.
“Although there is a conflict between [the statements made by the examining psychiatrists] it is the findings of this Court that the other three doctors were the attending physicians and are eminently qualified in their various fields, and that based upon their testimony the Court does not feel that James Ralph Sconyer could have an independent recollection of any of the events of this accident and therefore he would not be allowed to testify in the above styled cause. The Court has not personally examined the said James Ralph Sconyer and bases its decision on the medical testimony.
“It is the opinion of this Court that it is not a jury question as to the competency of a witness to testify in this hearing, but that it is a matter for judicial decision.
“The Court has also examined the various affidavits filed in evidence and finds that there is no material question of fact to be determined by a jury in that there is no conflict in the testimony given in the depositions of Edith Scheper and Edward.A. Scheper, Jr., and that as a matter of law, based upon their testimony, there would be no material question of fact to submit to a jury and as a matter of law there is no negligence.”
It is settled that when ruling on a motion for summary judgment, the trial court is not authorized to try or weigh facts. Its only function on such a motion is merely to determine whether there is present in the cause a material factual issue for trial by a jury. Where there is valid doubt as to the presence of a genuine material issue of fact, the doubt should be resolved against the movant, because he has the burden of demonstrating that no genuine issue as to a material fact exists. Yost v. Miami Transit Company, Fla., 66 So.2d 214; Johnson v. Studstill, Fla., 71 So.2d 251; Manning v. Clark, Fla., 71 So.2d 508; Jones v. Stoutenburgh, Fla., 91 So.2d 299.
As judged by this rule, it seems perfectly apparent to us that the trial court committed reversible error when it entered the summary judgment against the plaintiffs.
It is plain from the record that the trial court has never seen or examined any of the parties to the su¿t, or the witnesses whose depositions were taken, but has based its decision as to the competency of the plaintiff solely upon typewritten evidence. In these circumstances, the trial court was in no better position to-arrive at a correct conclusion as to the competency of the plaintiff and the credibility of the witnesses at the time the summary judgment was entered than is the appellate court on this appeal. Hence, the general rule to the effect that a judgment entered by a trial court on evidence will on appeal be presumed correct until' the presumption has been clearly overcome by the appealing party, does not obtain to-the same degree as it would where the trial court had seen and heard the witnesses testify. Harmon v. Harmon, Fla., 40 So.2d 209; Matthews v. Kingsley, Fla. App., 100 So.2d 445.
As we construe the effect of the depositions in the cause, the summary judgment was entered not only upon depositions that were in direct conflict with other depositions in the cause but also' on depositions that were not entirely consistent with each other on the material-issue presented for adjudication. In these circumstances we are of the view that the trial court should have denied the motion for summary judgment on the issue of *413 competency, and should have ruled that the plaintiff would be allowed to testify at the trial on the merits.
Some contention is made by the defendants that even if it is ruled that the plaintiff is competent to testify, the depositions in the cause, including the deposition of the plaintiff, disclose that there is no genuine issue of material fact to be presented to a jury. A mere reading of the depositions will disclose that there are material questions of fact for submission to a jury, and that the contention is without merit.
The judgment appealed from should be reversed and the cause should proceed in accordance with this opinion and judgment.
It is so ordered.
KANNER, Acting C. J., and SHANNON, J., concur.